IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MAURICIO MARTINEZ-DIAZ,

        Petitioner,

v.

UNITED STATES OF AMERICA,

        Respondent.

CASE NO. 2:12-CV-00243
CRIM. NO. 2:10-CR-00225(5)
JUDGE MARBLEY
MAGISTRATE JUDGE KING

## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. This matter is before the Court on the *Motion to Vacate*, Doc. No. 135, Respondent's *Return of Writ*, Doc. No. 149, Petitioner's *Reply,* Doc. No. 150, and the exhibits of the parties. Respondent has also supplemented the record, at the Court's direction, to reflect the fast-track program in this District. *Response to Order Requesting Fast-Track Program Guidelines*, Doc. No. 213 ("*Fast-Track Program Guidelines*"), and Petitioner has responded to that supplementation, Doc. No. 214. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**. Petitioner's request for an evidentiary hearing, *see Reply*, is **DENIED**.

**Facts and Procedural History:**

The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of this case as follows:

> Martinez-Diaz and several other men set out to locate Manuel Hernandez in order to collect a drug debt. A chase resulted, during which Martinez-Diaz and his co-defendants shot at Hernandez, held a woman who assisted Hernandez in taking the drugs and her young daughter hostage, and requested a ransom from Hernandez for their safe return. The woman and her daughter were eventually

1

recovered from the house of a co-defendant. During the course of events, Martinez-Diaz was arrested, and a firearm recovered from a vehicle in which he was a passenger as it left the hostage scene. Subsequent arrests resulted in the seizure of several firearms that had been used to further the conspiracy to recover money from Hernandez.

Martinez-Diaz is a citizen of El Salvador and is present in the United States illegally. He was charged with conspiracy to commit hostage-taking and hostage-taking, possession of firearms in furtherance of those crimes of violence, and being an illegal alien in possession of a firearm. Martinez-Diaz pleaded guilty to the count of possessing a firearm as an illegal alien in exchange for a dismissal of the remaining counts. In the plea agreement, Martinez-Diaz acknowledged that any calculation of his sentence under the guidelines was advisory and not binding on the court.

The presentence report set forth a calculation of his sentence based on a total offense level of 37, which included a six-level enhancement under USSG § 2A4.1(b)(1) for the use of a firearm during the offense. Martinez-Diaz received a three-level reduction for acceptance of responsibility. With a criminal history category of I, the resulting sentencing guideline range was 210 to 262 months in prison. However, this range was limited by the statutory maximum punishment of ten years.

Martinez-Diaz objected to the six-level enhancement on the basis that the "ransom" was actually a drug debt that arose from Barrera's conspiracy with Hernandez to steal the drugs from Martinez-Diaz. According to Martinez-Diaz, this circumstance prompted him to participate in the hostage taking, justifying a downward departure under USSG § 5K2.10. Martinez-Diaz also objected to the two-level enhancement, claiming that his possession of a firearm was only constructive.

At sentencing, the district court rejected Martinez-Diaz's first objection because Martinez-Diaz did not dispute that, even if Barrera had brought the situation upon herself by assisting Hernandez with stealing the drugs, Barrera's daughter was innocent and taken as a hostage against her will. Therefore, Martinez-Diaz had failed to show that the victims' conduct "contributed significantly to provoking the offense behavior," as required by USSG § 5K2.10. The district court also rejected Martinez-Diaz's second argument, because Martinez-Diaz admitted to at least constructive possession of a firearm and did not deny that, as part of a group of co-conspirators, he used a firearm

2

>to kidnap and detain others, meeting the requirement for enhancement under USSG § 2A4.1(b)(3).
>
>The district court then considered several factors under 18 U.S.C. § 3553(a), including the seriousness of the offense, Martinez-Diaz's personal history and background, the need to promote respect for the law, the need to impose a just punishment, the need to avoid disparities in sentences among defendants with similar charges, and the need for both specific and general deterrence. The court sentenced Martinez-Diaz to 111 months in prison, below the statutory maximum and the government's recommended sentence.

*United States v. Mauricio Martinez-Diaz,* No. 11-3342 (6th Cir. Feb. 27, 2012), Doc. No. 134.

On March 19, 2012, Petitioner filed the *Motion to Vacate*, asserting the following, single claim:

>Counsel was ineffective at sentencing for not requesting a variance based on U.S.S.G. 5K3.1 "fast track" program.

Respondent argues that the claim provides no basis for federal habeas corpus relief.

**Discussion:**

Petitioner contends that his attorney should have requested a reduction of Petitioner's sentence under the "fast-track" program or a downward departure under U.S.S.G. § 5K3.1 if a "fast-track" program was not available when he was sentenced in April 2011.

The Southern District of Ohio did not have a "fast-track" program in place at the time Petitioner was sentenced. *Fast-Track Program Guidelines*, p. 1. The program became effective in this District on March 1, 2012, and applies to "defendants who are charged under 8 U.S.C. § 1326 with illegal reentry into the United States after having previously been removed . . . ." *Southern District of Ohio Illegal Reentry Fast-Track Program*, ¶ A, attached as Exhibit A to *Fast-Track Program Guidelines.* Moreover, even a defendant charged with illegal reentry may be denied participation in the program based on that defendant's "prior conviction(s) for . . . a firearms offense . . . ." *Id.,* ¶C(1). *See Ona-Lopez v. United States*, No. 3:13-00572, 2013 WL

3

5555204, at *3 (M.D. Tenn. Oct. 8, 2013)(defendant charged with illegal reentry did not qualify for "fast-track" program because of prior disqualifying convictions).

The United States Court of Appeals for the Sixth Circuit described the "fast-track" program as follows:

> Fast-tracking arose initially in border areas with large illegal immigration caseloads. Prosecutors sought to clear their dockets through either charge-bargaining or agreements to move for downward departures in return for defendants' agreements not to file pretrial motions or contest issues. Congress approved and set standards for this process in the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub.L. 108–21, 117 Stat. 650, which required the United States Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." PROTECT Act, § 401(m)(2)(b), 117 Stat. 675. The Sentencing Commission responded by promulgating a new Guideline authorizing a four-level reduction. U.S.S.G. § 5K3.1.

*United States v. Camacho–Arellano*, 614 F.3d 244, 247–48 (6th Cir. 2010)(quoting *United States v. Hernandez–Cervantes,* 161 Fed. Appx. 508, 510 (6th Cir. Dec. 23, 2005)(unpublished)).

By the time *Camacho–Arellano* was decided, the fast-track program had been adopted in some, but not all, districts, resulting in sentencing disparities.  The District Court in *Camacho–Arellano* had rejected the argument that sentencing courts should factor this disparity into the sentencing process. Relying on *Kimbrough v. United States*, 552 U.S. 85 (2007), the United States Court of Appeals for the Sixth Circuit reversed and remanded the action, reasoning that a District Judge has the discretion to impose a sentence below the recommended Guideline sentence in light of the factors that motivated Congress to authorize the fast-track program. *Camacho-Arellano*, 614 F.3d 244.

In the case presently before the Court, Petitioner argues that his attorney's failure to make that argument (and the Court's failure to consider a lower sentence on this basis) deprived Petitioner of his right to the effective assistance of counsel.

The right to counsel guaranteed by the Sixth Amendment is the "right to effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686 (1984.) A claim of ineffective assistance of counsel requires proof of the following elements:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id*. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 692. In order to establish *Strickland*'s prejudice component, a petitioner must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Because a successful claim of ineffective assistance of counsel requires proof of both prongs of the *Strickland* test, if a petitioner fails to establish one prong, a court need not consider the other. *Id*. at 697.

Respondent contends that, because the fast-track program was not adopted in this District until March 2012, Petitioner's counsel was not ineffective for failing to seek Petitioner's participation in that program at Petitioner's April 2011 sentencing. *But see Zargosa-Tapia*, 2:11-cr-191, 2013 WL 1615556, at *4 (S.D. Ohio April 15, 2013)(District Court had discretion prior to March 2012 to consider a lower sentence for defendant convicted of illegal reentry into the

United States based on the disparity caused by the absence of a fast-track program in this District). In any event, the United States contends, Petitioner would not have qualified for participation in the fast-track program because he was charged with crimes of violence and firearms offenses, and was convicted of possession of a firearm by an illegal alien, not illegal reentry into the United States after having been deported.

This Court concludes that, because of the nature of the offenses with which Petitioner was charged and of the offense to which he pled guilty, Petitioner could not have qualified for participation in the "fast-track" program even if such a program had been implemented in this District at the time of Petitioner's sentencing. It follows, then, that his attorney was not ineffective for failing to seek a reduction in sentence based on that program. *See Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998)(counsel is not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel).

Petitioner therefore cannot establish that his attorney performed in a constitutionally unreasonable manner by failing to request a lower sentence based on either the "fast-track" program or any sentencing disparities arising from the absence of such a program in this District. Likewise, Petitioner cannot establish that he was in any respect prejudiced by his counsel's failure to request a lower sentence on these bases.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Procedure on Objections:**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with

supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                              *s/ Norah McCann King*
                                              Norah McCann King
                                              United States Magistrate Judge

October 30, 2013

,